UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SARAH J. BECK, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:18-cv-00174-JRS-DLP ) |
| HONDA MANUFACTURING OF INDIANA, LLC, | ) ) ) ) |
| Defendant. | ) |

**Entry on Defendant's Motion for Summary Judgment**

Plaintiff Sarah J. Beck alleges claims for disability discrimination against her former employer, Defendant Honda Manufacturing of Indiana, LLC. Specifically, Beck alleges both failure-to-accommodate and disparate-treatment claims under the Americans with Disabilities Act, 42 U.S.C. § 12111 *et seq*. *See Scheidler v. Indiana*, 914 F.3d 535, 540–41 (7th Cir. 2019) (recognizing that separate disparate-treatment claims and failure-to-accommodate claims are possible under the ADA). Honda moves for summary judgment. Construing all the facts and reasonable inferences in Beck's favor, as required for purposes of summary judgment, the Court concludes that genuine disputes of material fact preclude judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Honda's motion (ECF No. 75) is therefore **denied.**

**Failure to Accommodate**

The ADA requires employers to provide "reasonable accommodations that will allow a 'qualified individual with a disability' to perform the essential functions of his or her job." *Brown v. Milwaukee Bd. of Sch. Dirs.*, 855 F.3d 818, 820 (7th Cir. 2017)

1

(quoting *Miller v. Ill. Dep't of Transp.*, 643 F.3d 190, 197 (7th Cir. 2011)). "A claim for *failure to accommodate* under the ADA . . . requires proof (1) plaintiff was a qualified individual with a disability; (2) defendant was aware of his disability; and (3) defendant failed to accommodate his disability reasonably." *Scheidler*, 914 F.3d at 541. An individual is "qualified" within the meaning of the ADA only if she is able "with or without reasonable accommodation, [to] perform the essential functions of the employment position such individual holds or desires." 42 U.S.C. § 12111(8). Hence, "a worker has no claim under the ADA if she, even with a reasonable accommodation, cannot do the job for which she was hired." *DePaoli v. Abbott Labs.*, 140 F.3d 668, 674 (7th Cir. 1998).

Honda contends that Beck's ADA claims fail because she could not perform the essential functions of her position. According to Honda, Beck's permanent restrictions were "(1) no reaching or lifting above chest level, (2) no commercial driving, and (3) may lift floor to waist 1 pound frequently." These restrictions, Honda argues, rendered Beck incapable of performing certain requirements of Beck's production associate position listed in the job description: "frequent overhead reaching," "operating machinery such as forklift, overhead cranes and vehicles," and "lifting and carrying parts, max 40 lbs."[1] (Def.'s Br. 17 (citing Tate Decl., Ex. 2, ECF No. 76-4)). Beyond

---

[1] Beck contends that Honda cannot rely on the written job description because it was not provided to Beck before or during her employment and therefore "cannot be considered a written job description prepared before advertising or interviewing Ms. Beck before commencement of her employment with Defendant." (Pl.'s Br. 22.) Beck cites 29 C.F.R. § 1630.2(n)(1)(ii) for this proposition, but § 1630.2(n)(1) has no subparts. Presumably Beck intends to rely on § 1630.2(n)(3)(ii), which provides that "[e]vidence of whether a particular function is essential includes, but is not limited to . . . [w]ritten job descriptions prepared before advertising or interviewing applicants for the job." The regulation does not require that such job descriptions be provided to the employee, and the uncontroverted evidence shows that the job description was prepared prior to the events at issue here—that is, there is nothing to suggest

the general requirements listed in the job description, Honda argues that Beck's restrictions specifically disqualified her from working in any of Honda's departments: Beck could not work in Vehicle Quality because she could not drive or lift the 26-pound vehicle bonnet; Beck could not work in Paint and Plastics because she could not reach above chest or shoulder level; Beck could not work in Body Manufacturing because she could not reach or lift overhead or lift more than one pound; and Beck could not work in Assembly Frame because she could not reach or lift overhead, and the bolt gun weighs more than one pound. (Def.'s Br. 17.)

Honda's argument fails to account for critical evidence about the scope of Beck's restrictions—namely, that those restrictions applied only to Beck's right arm. Beck's restrictions arose from a workplace injury to her right shoulder. (Beck Decl. ¶ 9.) Beck underwent surgery for her shoulder and returned to work, restricted temporarily to left-handed work with breaks to ice her shoulder and no commercial driving. (*Id.* ¶¶ 10–12.) Beck was released from treatment for her right shoulder with permanent restrictions of "no reaching or lifting above chest level, no commercial driving, and may lift floor to waist one pound frequently." (*Id.* ¶ 13.) Beck testifies that those restrictions applied only to her right arm. (*Id.*) The doctor's written restrictions state:

Permanent Restriction

- No reaching/lifting above chest level
- No commercial driving

---

that the job description was prepared *post hoc* in anticipation of litigation. Accordingly, the job description is properly considered in determining the essential functions of the production associate position.

3

- May lift floor to waist 1 pound frequently

(Beck Dep., Ex. 1, ECF No. 77-1 at 2.) Directly above the handwritten restrictions, in a field labeled, "Extremity," the box for "Right" is checked. (*Id.*)

A factfinder could reasonably determine that Beck's restrictions applied only to her right arm. "Because Congress perceived that employers were basing decisions on unfounded stereotypes, the ADA discourages employment decisions based on stereotypes and generalizations associated with the individual's disability rather than on the individual's actual characteristics." *Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 573 (7th Cir. 2001) (quotation marks and citations omitted). Beck testifies that she could perform various production associate roles, and Honda's designated evidence does not compel the inference that Beck could not perform the various job functions with her left arm. *See id.* ("The ADA recognizes that a non-disabled person's instincts about the capabilities of a disabled person are often likely to be incorrect. Therefore, a determination that two-handed people use both of their hands to operate the high-speed scanner, or even a determination that most one-handed people would be unable to run it, should not be the end of an employer's inquiry.").

Along these same lines, there is evidence that Beck's position did not require a commercial driver's license. (Beck Decl. ¶ 14.) Honda's designated evidence does not compel the inference that Beck's *commercial* driving restriction precluded her from performing whatever driving was required of production associates. Accordingly, a reasonable factfinder could conclude that Beck was a qualified individual with a disability within the meaning of the ADA.

4

Honda further argues that it is entitled to summary judgment because it reasonably accommodated Beck's restrictions by providing temporary, light-duty positions and then 16 months of medical leave. "Reasonable accommodation under the ADA is a process, not a one-off event." *Scheidler*, 914 F.3d at 542. The light-duty positions may well have discharged Honda's duty to accommodate for as long as they lasted, but they did not last beyond May 2016, when Honda placed Beck on long-term medical leave. The medical leave—which Beck did not seek—is not a reasonable accommodation that discharges Honda's duty to accommodate under the ADA, as "the term 'reasonable accommodation' is expressly limited to those measures that will enable the employee to work." *Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 479 (7th Cir. 2017). "Simply put, an extended leave of absence does not give a disabled individual the means to work; it excuses his not working." *Id.* at 481. Honda's reassigning Beck to light duty and then placing her on medical leave does not entitle Honda to judgment as a matter of law on Beck's failure-to-accommodate claim.

**Disparate Treatment**

"A claim for *disparate treatment* based on disability under the ADA . . . requires proof (1) plaintiff was disabled; (2) plaintiff was qualified to perform essential functions with or without reasonable accommodation; and (3) disability was the 'but for' cause of adverse employment action." *Scheidler*, 914 F.3d at 541. Honda first argues that summary judgment on Beck's disparate-treatment claim is appropriate because Beck was not a "qualified individual with a disability." (Def.'s Br. 19.) That argument

5

fails for the reasons discussed above. Next, relying on the *McDonnell Douglas* burden-shifting framework, Honda argues that Beck has not established a *prima facie* case of discrimination because Beck has not identified any similarly situated, non-disabled employees. (*Id.*) Honda further argues that Beck has not adduced any evidence that Honda's reasons for terminating her employment were pretext. (*Id.* at 20.)

As the Seventh Circuit has explained, *McDonnell Douglas* is not one-size-fits-all. *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017). The fundamental question in employment discrimination cases is "simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's [disability] caused the discharge or other adverse employment action." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). *McDonnell Douglas* is just one tool for answering that question by "organizing, presenting, and assessing circumstantial evidence in frequently recurring factual patterns found in discrimination cases." *David*, 846 F.3d at 224.

It is not the appropriate tool for this case. Here, Honda itself states in its brief that Honda "terminated Beck because it did not have an open position for which she was qualified and for which she could perform the essential functions of the position with or without reasonable accommodation." (Def.'s Br. 20 (quotation marks and brackets omitted).) A reasonable factfinder could, from that quoted portion of the termination letter, find that Beck's disability caused her termination. "The purpose of the *McDonnell Douglas* burden-shifting approach is to allow a plaintiff to raise an

6

inference of discrimination even in the absence of direct evidence. It would be redundant to require a plaintiff to utilize the burden-shifting method to raise a presumption of discrimination if he or she possesses direct evidence of discrimination." *Hoffman v. Caterpillar*, 256 F.3d 568, 574 (7th Cir. 2001) (internal citation omitted). Indeed, applying the *McDonnell Douglas* framework here produces absurd results: Honda argues that Beck's claim fails because she has not proven pretext—*i.e.*, that Honda was lying when it told her she was fired because of her disability. (Def.'s Br. 20.) Honda's argument, in other words, would require Beck to disprove her case to prove it. Honda is not entitled to summary judgment on Beck's disparate-treatment claim.

## Failure to Mitigate Damages

Honda also moves for summary judgment on its affirmative defense of failure to mitigate. *See Stragapede v. City of Evanston, Ill.*, 865 F.3d 861, 868 (7th Cir. 2017) ("A plaintiff who wins a favorable verdict on an ADA claim is presumptively entitled to backpay. The plaintiff must submit evidence to support his calculation of backpay, and the burden then shifts to the defendant to show that the employee failed to mitigate damages or that damages were in fact less than he asserts.") (internal quotation marks, brackets, and citations omitted). Honda does not move for an order limiting damages to some subset of Beck's claimed damages; it moves for dismissal of Beck's claim for damages. (Def.'s Br. 22.) Beck claims damages beginning with her placement on medical leave in May 2016. (ECF No. 111-3 at 3.) But Honda's submissions do not address when Beck's duty to mitigate arose—namely, whether Beck's duty to mitigate began when she was placed on medical leave or sixteen months later, when

7

she was terminated. *See Fleming v. Cty. of Kane, Ill.*, 898 F.2d 553, 561 (7th Cir. 1990) (limiting award for loss of wages to the period during which the plaintiff's efforts to secure new employment were reasonable). With neither evidence nor argument regarding when Beck's duty to mitigate arose, Honda has not carried its burden to prove failure to mitigate so as to warrant dismissal of Beck's entire claim for damages on summary judgment.

## Evidentiary Matters

There are various evidentiary objections outstanding. Honda objects to the declarations of Britney Thomas and Rhonda Cook, contending that the two declarants were not disclosed and that their declarations contain hearsay. Honda's motion for summary judgment falls short without considering those declarations, so the Court does not reach the issue. Beck objects to the second declaration of Brandon Parker. Summary judgment is not warranted even taking Parker's declaration into account; the Court does not reach the issue.

## Conclusion

For the reasons set forth above, Honda's motion for summary judgment (ECF No. 75) is **denied.**

Date: 3/6/2020

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

**SO ORDERED.**

Distribution:

J. Kevin King
CLINE KING & KING PC
mjn@lawdogs.org

Jennifer Ann Rulon
FROST BROWN TODD, LLC
jrulon@fbtlaw.com

Heather L. Wilson
FROST BROWN TODD LLC (Indianapolis)
hwilson@fbtlaw.com